IN THE UNITED STATES OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-4843
_____


CLIFFORD DUHON,

Plaintiff-Appellee,
Cross-Appellant,

versus

TEXACO, INC., ET AL.,

Defendants-Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court for the
Western District of Louisiana

_____

(    February 22, 1994    )

Before JOHNSON, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case presents us with a rather typical question pertaining to ERISA benefits: the plaintiff, Clifford Duhon, claims he was improperly denied long-term disability benefits by his employer and moved for summary judgment in the district court. The district court granted summary judgment in favor of Duhon. It found that the evidence was insufficient because the plan administrator determined disability based only on the reports of medical doctors when the opinion of a vocational rehabilitation expert was required. The district court ordered the plan administrator to pay Duhon all past due benefits as well as future

benefits.  On appeal, we attempt to wade through the procedural thicket of the case and focus on the central inquiry that should be made in these cases:  Did the decision of the plan administrator denying long-term disability benefits to Duhon constitute an abuse of discretion?  Because we find that it did not, we reverse the district court's grant of the plaintiff's summary judgment motion and remand the case for further proceedings.

I

Appellee Clifford Duhon, now sixty-six years old, was employed by appellant Texaco Trading and Transportation, Inc. ("Texaco") from July 1985 through February 1989 as a truck driver.  On March 1, 1989, Duhon ended his employment as a truck driver because of a degenerative back condition.  That date marked his separation from work for purposes of Texaco's employee benefits plan; he began receiving disability payments of $652.35 per month.  Under Texaco's disability plan, an employee may receive disability payments for the first twenty-four months after the disability begins if the employee is unable to perform the normal duties of his regular job assignment or a comparable one.  Neither party disputes that Duhon qualified for these disability payments for the first twenty-four months following his separation from work.  After this initial twenty-four month period passes, disability payments cease under the plan "if the employee is able to perform <u>any job</u> for which he or she is, or may become, qualified by training, education, or experience."  (Emphasis ours).

Three doctors evaluated Duhon's condition in 1991 in order to determine if his disability benefits should continue beyond the initial twenty-four month period. Duhon was first evaluated by his family physician, Dr. Charles Ray, who executed a disability statement concluding that Duhon was unable to work as a truck driver and that his condition was permanent. Dr. Jacob Lahasky, also a general practitioner, next examined Duhon at Texaco's request. Dr. Lahasky executed a disability statement in which he concluded that Duhon should not drive trucks or do any heavy lifting. He also stated that Duhon's condition was permanent. Finally, in July 1991, Duhon was seen by an orthopedist, Dr. Thomas Ford, at Texaco's request. Dr. Ford's report concluded that Duhon had degenerative lumbar disc disease, which rendered him unable to squat, stoop, bend, or lift more than twenty-five pounds. Dr. Ford agreed with the two general practitioners that Duhon could not return to work as a truck driver, but stated that Duhon was capable of doing "sedentary to light work."

In October 1991, in accordance with the terms of the plan, the plan administrator and Texaco's chief medical officer reviewed all of the medical evidence and determined that Duhon did not qualify for continuing long-term disability payments beyond the initial twenty-four month period. Duhon appealed the decision to the plan administrator, but the appeal was denied. He then filed suit in federal district court against Texaco and the plan administrator, claiming a violation of ERISA. Shortly after filing suit, Duhon

moved for summary judgment. The court granted Duhon's motion for summary judgment, and additionally ordered Texaco to pay Duhon $652.35 for each month since it terminated his disability payments, plus interest, and to continue paying those benefits to Duhon every month thereafter. The court denied Duhon's request for attorney's fees. Texaco now appeals the summary judgment granted in favor of Duhon.[1]

## II

In his motion for summary judgment, Duhon argued that additional information was required before the plan administrator could properly determine that Duhon was not disabled and deny him benefits under the plan. Duhon pointed out that the plan required the administrator to find that Duhon was or may have become "qualified by training, education or experience" to perform "any job." He argued that the mere fact that a medical doctor had concluded that he was capable of doing "sedentary to light work" did not mean that he was "qualified by training, education or experience" to do any such job. The district court agreed, finding that "Dr. Ford's statement that Duhon was physically capable of performing sedentary work says nothing as to whether Duhon was or could become qualified to perform such a job." District Court's Memorandum Ruling at 4.

---

[1]Duhon cross-appeals the district court's denial of attorney's fees. Because we find that the district court erred in granting summary judgment to Duhon, his cross-appeal seeking attorney's fees is denied.

Summary judgment is appropriate if "the record discloses `that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Rodriquez v. Pacificare, Inc., 980 F.2d 1014, 1019 (5th Cir. 1993) (quoting Fed. R. Civ. P. 56(c)). We review a district court's grant of summary judgment de novo, FDIC v. Ernst & Young, 967 F.2d 166, 169 (5th Cir. 1992), and apply the same standard of review as did the district court. Rodriquez, 980 F.2d at 1019. In this case, where the district court's only task was to review the decision of the plan administrator, the only summary judgment question before the district court was one of law: what was the proper standard of review to be applied to the plan administrator's denial of benefits, and, under that standard, should the denial be upheld?

III

A

We must begin our inquiry with a determination of the standard of review to be applied to the plan administrator's denial of benefits. The plaintiff couched his argument, and the court couched its holding, in terms that failed to speak to the standard of review to be applied in analyzing the decision of the plan administrator. The district court entered summary judgment ordering benefits be paid to Duhon, which reversed the plan administrator's denial of those benefits. A denial of ERISA benefits by a plan administrator challenged under § 502(a)(1)(B) of

ERISA, 29 U.S.C. § 1132(a)(1)(B), is reviewed by the courts under a <u>de novo</u> standard unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Challenges to the plan administrator's interpretation of plan terms, like the one presented in this case, are reviewed under an abuse of discretion or "arbitrary and capricious" standard if the plan grants the administrator the authority to make a final and conclusive determination of the claim. <u>Id.</u> Texaco correctly asserts that its plan grants such authority to the administrator, and, thus, the administrator's decision is subject to an abuse of discretion standard of review. The plan addresses the discretion of the plan administrator in Article 8.04, which states that "[t]he decisions of the Plan Administrator shall be final and conclusive with respect to every question which may arise relating to either the interpretation or administration of this Plan." Additionally, the section entitled "Claims Procedure" provides in part that "[a]fter you undergo the necessary physical examination(s) and upon review of all facts in the case, the Plan Administrator will make the decision to authorize or deny payments."

Applying the <u>Bruch</u> analysis to this language, it is clear that the plan administrator has the discretionary authority to make a final and conclusive determination of the claim. This court has not imposed a linguistic template to satisfy this requirement,

-6-

Wildbur v. ARCO Chemical Co., 974 F.2d 631 (5th Cir. 1992), modified, 979 F.2d 1013 (5th Cir. 1992), but in this case the plan's plain language provides that the administrator may make an independent and final determination of eligibility. See also, Lowry v. Bankers Life & Casualty Retirement Plan, 871 F.2d 522, 524-25 (5th Cir. 1989).

Duhon argues that any discretion afforded Texaco under the abuse of discretion standard of review is limited because of Texaco's conflict of interest as both the administrator of its own plan and the payor of the disability benefits. He cites Bruch, where the Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Bruch, 489 U.S. at 115, 109 S.Ct. at 957 (citation and internal quotes omitted). Duhon contends that the conflict of interest in this case is so great that the abuse of discretion standard of review should be transformed into a de novo standard of review. He states in his brief, without more, that "[t]he history of this claim indicates the conflict indeed influenced the decision and the processing of the claim."

We fail to find Duhon's argument on this point fully convincing. Texaco's plan administrator was apparently also an employee of the company. Although we agree that this fact raises the possibility of a conflict of interest, we will follow the

Supreme Court's direction in <u>Bruch</u> and weigh this possible conflict as a factor in our determination of whether the plan administrator abused his discretion, instead of adopting <u>ex cathedra</u> Duhon's suggestion of altering the applicable standard of review. Thus, the standard of review we apply in our review of the plan administrator's decision is the arbitrary and capricious or abuse of discretion standard, with due consideration given to the fact that the plan administrator in this case was also apparently an employee of Texaco and therefore possibly operated under a conflict of interest.

B

We now turn to the merits of the arguments presented in this appeal. Duhon sought summary judgment arguing that the plan administrator did not properly interpret the terms "qualified" for "any" job, and that the evidence was insufficient to determine that Duhon was qualified for any job. Thus, as the proponent of the motion for summary judgment, Duhon had the burden of establishing that the plan administrator abused his discretion by (1) misinterpreting the terms of the plan or by (2) concluding that the medical opinions presented by Texaco constituted insufficient evidence upon which to determine Duhon's disability status. We conclude that Duhon established neither, and thus was not entitled to summary judgment.[2]

_____

[2]Although the dissent seems to suggest otherwise, the question of whether Texaco's plan administrator abused his

We begin our analysis with an examination of the evidence before the plan administrator--as that evidence was presented to the district court on summary judgment--at the time he made his decision to terminate Duhon's benefits. The district court was presented with six documents; the parties stipulated that these six documents were a "fair representation of all documents which comprise[d] the administrative record."

In order of presentation to the court, the first exhibit is a report from Duhon's family physician, Dr. Ray, stating that Duhon "will probably be permanently disabled from driving." The second document is a report from Dr. Lahasky, a family practitioner who examined Duhon at Texaco's behest, which describes Duhon's limitations as: "No driving of trucks. No heavy lifting." Third is a letter from Dr. Ford, an orthopedist selected by Texaco who saw Duhon subsequent to Drs. Ray and Lahasky, stating that Duhon suffers from degenerative lumbar disc disease and cannot return to work as a truck driver, but "is capable of doing sedentary to light work." The fourth exhibit is a medical report showing that Duhon has two ruptured disks in his back.

discretion was expressly argued by Texaco. As our opinion notes, whether underlying grounds are argued for supporting or rejecting the plan administrator's decision, the ultimate question presented in this case comes down to whether the denial of Duhon's benefits was an abuse of discretion. The failure of the parties to analyze properly the issues before the court is not the same as failing to raise the issue. Nor are we required to articulate the issues or read the statutory and case authority presented in an appeal in precisely the same manner employed by the parties.

The final two documents are evaluations by Dr. Robert Shaw, Texaco's chief medical officer, and Dr. Burton Miller, another Texaco staff doctor, of the medical findings of the three doctors who examined Duhon. Both doctors concur in the plan administrator's decision to discontinue disability benefits. In Dr. Miller's report, he notes that "[t]here is a distinct paucity of physical findings and in fact, [Duhon] appears to have little difficulty with flexion, extension or lateral bending." He further refers to the only document that Duhon presented before the administrator: a letter from his attorney, Mark Ostrich, declaring that Duhon "cannot stand for more than 30 minutes, has a special chair to sit in and...has only a high school education." Dr. Miller stated in his evaluation:

> With respect to Mr. Ostrich's letter, I cannot find any medical reference to support his contention that the employee "cannot stand for more than 30 minutes" or that he requires a "special chair to sit in." Furthermore, his initial disability was only for his usual job, driving a truck, and this was the basis for his receiving benefits. He was never found disabled from "doing sedentary to light work," as noted in the opinion of his orthopedic surgeon, Dr. Thomas B. Ford.

We emphasize that no other evidence--only the above exhibits from the administrative record--was presented to the district court by either Texaco or Duhon. We further emphasize that it is on this record that this appeal must be decided.

C

The plaintiff argues that the district court properly granted summary judgment in his favor because there is no evidence in the

-10-

administrative record illustrating that he can actually perform any identifiable job. The defendants counter that the plan does not require the availability of an alternate job as a prerequisite to termination of long-term disability benefits; they argue that the medical evidence presented was more than sufficient to justify their decision to terminate Duhon's benefits, especially in the light of the abuse of discretion standard of review.

The Formal Text of the Long-Term Disability Plan of Texaco Inc., Article 5, deals with cessation of benefits under the plan. It states in pertinent part:

> 5.01     Payments under this Plan shall cease upon the earlier of:

> (d)   expiration of the 24-month period following the Employee's LTD separation date or upon any date thereafter, <u>if the Employee is able to perform any job for which he or she is, or may become, qualified by training, education, or experience....</u>

(Emphasis ours.)

The question before us is whether the plan administrator abused his discretion in interpreting the phrase "any job for which he...is, or may become qualified" actually to include <u>any</u> job that required only "sedentary to light work" for which Duhon was otherwise qualified. When we apply the applicable standard of review to the administrator's determination, we cannot say that he

abused his discretion in terminating Duhon's long-term disability benefits.[3]

The administrator possessed medical evidence indicating that Duhon was able to perform "sedentary to light work."  The plan clearly states that benefits will be discontinued after the twenty-four month initial period "if the Employee is able to perform any job for which he or she is, or may become, qualified by training, education, or experience."  As Dr. Miller noted in his report, no evidence has been presented that Duhon is incapable of performing

_____

[3]Some cases in our circuit that have analyzed questions similar to the one before us today have suggested a two-step analysis.  First, the reviewing court determines the legally correct interpretation of the plan.  If the administrator did not give the plan the legally correct interpretation, then the court must determine whether the administrator's decision was an abuse of discretion.  See, e.g., Wildbur v. ARCO Chemical Co., 974 F.2d 631, 637 (5th Cir. 1992); Jordan v. Cameron Iron Works, Inc., 900 F.2d 53, 56 (5th Cir. 1990), cert. denied, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); Dennard v. Richards Group, Inc., 681 F.2d 306, 314 (5th Cir. 1982).  These cases further suggest factors the reviewing court may consider when appropriate.  However, the reviewing court is not rigidly confined to this two-step analysis in every case.  As noted in Wildbur v. ARCO Chemical Co., 974 F.2d at 637, "[a]pplication of the abuse of discretion standard may involve [the] two-step process." (emphasis supplied).  In this case, the administrator concluded that Duhon was able to work.  The record contains evidence of Duhon's age, education, work experience, and physical capabilities and limitations.  On this record, the administrator did not abuse his discretion, especially in the light of the fact that Duhon -- the plaintiff and the claimant -- presented no evidence that rebuts or otherwise challenges the evidence demonstrating that he was qualified for sedentary jobs that persons with high school educations can perform.  Thus, on the basis of this record, because the administrator clearly did not abuse his discretion, it is unnecessary for the court to conduct the two-step analysis.

any job; the evidence before the plan administrator--and the district court--merely stated that he is unable to return to his former position as a truck driver. It was not an abuse of discretion for the plan administrator to conclude that a sixty-five year old man with a high school diploma and plenty of experience in the work-a-day world, although unable to squat, stoop, bend, or lift more than twenty-five pounds, would be able to perform the functions of some identifiable job. Indeed, to find otherwise would be blindly and deliberately to ignore a common -- and uncontested -- truth: people in their sixties and seventies who have similar physical and job limitations established by this record are employed and employable throughout the workplace today.

D

We now turn to the plaintiff's closely aligned argument that the evidence of disability was insufficient because the testimony of a vocational rehabilitation expert was required, instead of that of a medical doctor, to determine whether he was capable of performing "any job for which he...is, or may become, qualified by training, education, or experience." The district court, relying on Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan, 874 F.2d 496, 499 (8th Cir. 1989), found that the report of a vocational rehabilitation expert, although "perhaps . . . merely an additional formality given Duhon's background and capacity,"[4] was

_____

[4]District Court's Memorandum Ruling, p. 4 n.2.

nonetheless necessary in this case.  In short, the argument we turn to address is whether the plan administrator abused his discretion in determining, without expert testimony, that Duhon was not permanently disabled.

We are aware that the circuits are split on the issue of whether a plan administrator may be required to obtain vocational rehabilitation evidence before he makes a final determination of disability.  In <u>Gunderson</u>, the Eighth Circuit reviewed a plan similar to Texaco's and found that "before terminating benefits, the Plan should have obtained a vocational expert's opinion to determine if Mr. Gunderson is presently capable, in light of his physical impairment, to perform `any occupation'...."  We agree, however, with the reasoning of then-Judge Ruth Bader Ginsburg writing for the District of Columbia Circuit in <u>Block v. Pitney Bowes Inc.</u>, 952 F.2d 1450 (D.C. Cir. 1992).

In <u>Block</u>, the plaintiff complained that the administrator presented no vocational evidence of jobs for which he was "reasonably fitted by education, experience, capability or training."[5]  <u>Block</u>, 952 F.2d at 1455.  The court found that no provision of the plan in question required Pitney Bowes, "as a condition of terminating Block's compensation, to ensure the availability of an alternative job."  <u>Id.</u> (Citations & internal

---

[5]We should note that in <u>Block</u>, as in most of these cases, it was the plan administrator and not the claimant who moved for summary judgment and who thus had the concomitant burden of proof.

quotes omitted.)  The court concluded that "[t]he medically-indicated limitations--[Block could work a full day subject to limitations on standing (two hours), walking, lifting (20 pounds), and bending (four out of eight hours)]--were not so great, nor Block's occupation so specialized, that the Committee could be called unreasonable for refusing to conclude that sales positions in the D.C. area for which Block could qualify were scarce."  Id.

Similarly, we will not hold that absent vocational rehabilitation evidence a plan administrator necessarily abuses his discretion in making a final determination of disability.  Instead, we will allow the reviewing court to decide, on a case-by-case basis, whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert.

In this case, we find that it was not an abuse of discretion for the plan administrator to conclude that Duhon was capable of performing some type of occupation without obtaining the opinion of a vocational rehabilitation expert.[6]  Duhon was a sixty-five year

---

[6]As we noted earlier, pursuant to the Supreme Court's direction in Bruch, we have considered the possible conflict of interest on the part of the plan administrator in our determination of whether he abused his discretion in terminating Duhon's benefits.  In short, the presence of a possible conflict does not affect the outcome in this case.  Duhon has offered no evidence or grounds for suspicion that the decision was improperly influenced by the fact that the administrator was in some fashion an employee of Texaco; he adduced no evidence of the financial and employment arrangements between the administrator and Texaco that would illuminate the nature of the alleged conflict.  In any event, on the record before us, the merits of

old man in overall good health with a high school diploma and moderate restrictions on his physical activity. The plan only required a finding that Duhon could perform "any job for which he is, or may become, qualified by education, training, or experience." Given this undemanding language and the medical evidence in this case, the plan administrator could competently determine disability without vocational testimony. Texaco's disability benefits plan is not a form of employment insurance; it was not necessary under this plan that the administrator "insure the availability of an alternative job" for Duhon before terminating his benefits.

Additionally, we note that it was Duhon who moved for summary judgment in this case, and, thus, it is Duhon who has the burden of illustrating that he is entitled to judgment as a matter of law. The summary judgment evidence in this administrative proceeding showed that he chose not to present any evidence whatsoever in support of his claim that he was "totally and permanently disabled." Instead, he relied only on his attorney's unsupported statements that Duhon was unable to stand for more than 30 minutes and needed a special chair in which to sit. At the time of the administrative proceeding, Duhon was aware of Dr. Ford's opinion that Duhon was in fact "capable of sedentary to light work." He

---

this case are not so close that the possibility of a conflict of interest on the part of the administrator could be a determinative factor.

had the opportunity to present evidence to refute this opinion or call it into question, but chose not to do so.

As the Fourth Circuit has noted, "Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing." Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989). Claimants must present their strongest available case to the plan administrator, because the primary decision is made at that point. "Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Makar, 872 F.2d at 83. Duhon's attempt to circumvent congressional mandate by failing fully to argue his claim and provide supporting evidence during the administrative appeal process, in the hopes that his case could be decided instead in the federal courts, must fail.

In sum, after a review of the district court's decision, we find that it erred in granting Duhon's motion for summary judgment.[7]  We therefore REVERSE the district court's grant of summary judgment and REMAND the case to the district court for further proceedings not inconsistent with this opinion.[8]

REVERSED and REMANDED.

JOHNSON, Circuit Judge, Dissenting:

Were the issue before this Court and the facts within this case as the majority portrays them, this writer would be constrained to concur.  However, Texaco has not asked this Court to determine whether its plan administrator abused his discretion by finding that Mr. Duhon was, in fact, qualified or could become qualified to perform a job.  Texaco instead asks this Court to

---

[7]We also note that the district court erred in the relief it granted to Duhon.  The district court, in its role as a reviewing court, was in no position to award disability benefits to him when it merely found that the evidence was insufficient to support a finding of disability, and not that the plan terms required the granting of benefits to Duhon as a matter of law. Even if the district court had been correct in its finding that the plan administrator had insufficient evidence before him to determine whether Duhon met the plan definition of disability, the appropriate relief in this instance would have been to remand the case to the plan administrator with instructions to take additional evidence.

[8]Texaco did not move for summary judgment and consequently it would be procedurally inappropriate for us to direct judgment in favor of Texaco in this opinion.

decide that the plan administrator was *not required* to make such a finding. In Texaco's view, as long as an employee is physically capable of performing a job——even if *un*qualified and *in*capable of becoming qualified to perform that job——he is no longer disabled under Texaco's Long Term Disability Plan. The majority ignores this, the true issue, before the Court. It creates another, less defensible, issue; ignores evidence in the administrative and appellate record; and disregards Fifth Circuit precedent which, if applied, compels affirmance of the district court's decision. This writer cannot concur and therefore respectfully dissents.

By disregarding Texaco's point of error here, the majority reviews this case as if a factual finding were in dispute. However, there is no disputed fact finding at issue in this case. Texaco's plan administrator did not find that Mr. Duhon was actually qualified or could become qualified to perform a job.[9] Texaco's sole claim is that it correctly interpreted the Long Term Disability Plan as requiring *no* finding that an employee is or can become qualified to perform work.

This Court has specifically set out a two-step process for reviewing plan-interpretation cases. Contrary to the majority's portrayal of *Wildbur v. ARCO Chemical Co.*, the application of this process is not discretionary. Fifth Circuit case law——which is

_____

[9]Even if there were such a finding——and there is not——Texaco waived any alleged error with respect to that finding, for it did not appeal on that ground.

binding on this Court——makes it abundantly clear that the application of the two-step process in plan-interpretation cases is mandatory. Courts reviewing an administrator's interpretation of a plan must first determine whether the plan administrator provided a legally correct interpretation of the plan. If the administrator's interpretation is not legally correct, courts must then determine whether the administrator abused his or her discretion in interpreting the plan. *Jones v. SONAT, Inc.*, 997 F.2d 113, 115, 116 (5th Cir. 1993) ("In analyzing [the] Committee's interpretation of [the plan], we *must* first decide whether the Committee's interpretation of the plan was `legally correct.' . . . Having decided that the Committee's interpretation was `legally incorrect,' we *must* next determine whether the Committee abused its discretion." (emphasis added)); *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir.), *cert. denied*, 498 U.S. 939 (1990) ("First, the court *must* determine the legally correct interpretation of the Plan's provisions. . . . If the administrator has not given a plan the legally correct interpretation, the court *must* then determine whether the administrator's interpretation constitutes an abuse of discretion." (emphasis added, quotation marks deleted)); *Batchelor v. International Board of Electric Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 444-45 (5th Cir. 1989) ("First, the court *must* determine the [legally] correct interpretation of the Plan's provisions. . . . [Then w]e *must* determine whether the [administrators'] interpretation rises

to an abuse of discretion." (emphasis added; quotation marks deleted)).[10]  Cases decided prior to *Firestone Tire and Rubber Co. v. Bruch*, though reviewed under the arbitrary and capricious standard, also determined that application of the two-step process was mandatory.  *See, e.g., Denton v. First National Bank*, 765 F.2d 1295, 1304 (5th Cir. 1985) ("First, the court *must* determine the correct interpretation of the Plan's provisions.  Second, the court *must* determine whether the Plan administrators acted arbitrarily or capriciously." (emphasis added)).

To establish the legally correct interpretation of a benefit plan, courts are to consider 1) whether the plan administrator has given the plan a uniform construction, 2) whether the interpretation comports with a fair reading of the plan, and 3) whether different interpretations of the plan will result in unanticipated costs.  *Jordan*, 900 F.2d at 56; *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992).  We have no information as to the Texaco plan administrator's previous interpretations of the benefit plan.  However, it seems clear—and the majority apparently agrees—that Texaco's Long Term Disability Plan requires Texaco to prove two things: Texaco must prove that the employee in question is physically capable of performing a job

_____

[10]The majority's explanation for disregarding these cases—asserting that the plan administrator did not abuse his discretion in finding that Mr. Duhon was or could become qualified to perform a job—is misleading.  As explained earlier, the administrator made no such finding.

("physical-capability element"), and it must prove that "he or she is, or may become, qualified [to perform a job] by training, education, or experience" ("qualification element").[11]

Texaco completely ignores the qualification element in the plan's "permanent total disability" definition. It does not argue that the "plan does not require the availability of an alternate job as a prerequisite to termination of long-term disability benefits," as the majority asserts. Maj. Op. at 12. Texaco instead argues that its plan *does not contain* a qualification element *at all*. Texaco proffers one, and only one, point of error:

> The District Court erred in holding that the Texaco Long-Term Disability Plan *required the determination of whether plaintiff was or could become qualified to perform work* for which he was physically capable of performing prior to any termination of disability benefits under the Plan.[12] (Emphasis added).

---

[11]Article 2.07 of the plan reads:

"Permanent total disability" or "disabled" means that during the first 24 months following an Employe's LTD separation date, the Employe is unable to perform the normal duties of his or her regular or comparable job assignment with the Company. Thereafter, "disabled" or "permanent total disability" means the Employe is unable to perform any job for which he or she is, or may become, qualified by training, education, or experience.

[12]Hence, the majority postures the issue it addresses. The plan administrator did not interpret "the phrase `any job for which he . . . is, or may become qualified' actually to include *any* job that required only `sedentary to light work.'" Maj. Op. at 12 (emphasis in original). Texaco makes clear the fact that the administrator interpreted the qualification phrase as being completely non-existent.

Texaco, Inc. Brief at iv, 16.

Texaco's deletion of the second element—one of only two elements in the "permanent total disability" definition—is anything but a "fair reading" of the plan.  Additionally, Texaco has not claimed that administering the plan under the correct construction will result in the expenditure of unanticipated costs. Thus, under *Jordan* and *Wildbur*, Texaco's interpretation of the plan is legally, indeed patently, incorrect.  It directly conflicts with the clear language in the Long-Term Disability Plan by rendering totally nugatory a required element in the plan.

A legally incorrect interpretation does not automatically signal an abuse of discretion.  Courts must consider the following in reviewing plan interpretations for abuse of discretion:  1) whether the plan is internally consistent under the administrator's interpretation, 2) the existence of any relevant regulations formulated by appropriate administrative agencies, and 3) the factual background of the plan administrator's determination and any inferences of a lack of good faith.  *Wildbur*, 974 F.2d at 638. Additionally, "[w]hen [the administrator's] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior."  *Id*. (quoting *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 445 (5th Cir. 1989)).  Moreover, unless a plan administrator shows that his interpretation benefits all plan participants, his

reasonable, but incorrect, interpretation of the plan constitutes an abuse of discretion if it advances the fiduciary's interest at the expense of the affected beneficiary. *Id; Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566-67 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991); *accord Jones v. SONAT, Inc.*, 997 F.2d 113, 116 (5th Cir. 1993).

In my view, the application of each of these rules to the facts of this case points emphatically to an abuse of discretion. The administrator's omission of an entire element of the permanent disability definition is completely inconsistent and directly conflicts with the plain language of the plan. Texaco's interpretation is therefore anything but reasonable. Even if such a construction were reasonable—and it certainly is not—a finding of abuse of discretion would still be inevitable, for the administrator's construction of the plan promotes Texaco's interests at the expense of Mr. Duhon. The administrator's interpretation makes Texaco's job of proving no disability inordinately easier and therefore raises an inference of a lack of good faith.

Further, as the majority acknowledges, a possible conflict in interest exists here. This Court faced a similar conflict-in-interest situation in *Jones v. SONAT, Inc.* There, the plaintiff sued his employer, Southern Natural Gas Co. ("SONAT"), challenging SONAT's denial of disability benefits. After determining that the benefit review committee had incorrectly construed the plan, this

Court relied upon three facts to decide that SONAT had abused its discretion: 1) the members of the benefit review committee were all SONAT corporate officers, 2) the committee's interpretation of the plan reduced benefit outlays and therefore advanced SONAT's interests at the employee's expense, and 3) the committee failed to properly justify its interpretation of the plan by showing that plan participants would be benefitted thereby. 997 F.2d at 116.

The facts in *Jones* are strikingly similar to the facts in this case. The plan administrator here was a Texaco employee.[13] Also, as in *Jones*, Texaco's interpretation of the plan advances its interests of reducing benefit outlays at the expense of disabled employees: That interpretation allows Texaco to discontinue disability payments to those employees who, though physically capable of performing a job, are unqualified and unable to become qualified to perform a job. Finally, Texaco has not attempted to justify its interpretation of the plan by showing that plan participants are benefitted by the deletion the qualification element. Thus, under *Jones*, *Wildbur*, and *Brown*, Texaco has undoubtedly abused its discretion in interpreting the plan. The district court therefore correctly granted Mr. Duhon's motion for summary judgment.

---

[13]In fact, the Long-Term Disability Plan specifically states that "*[t]he Company* shall, in any case, determine what constitutes permanent and total disability, when the same commenced, and at any time reverse or alter any such determination." (Emphasis added).

Had Texaco sufficiently proved that Mr. Duhon was or could have become qualified to perform a job——and appealed on that ground——this writer might agree with the majority's disposition of this case. However, Texaco could never have sufficiently proved that Mr. Duhon was or could become qualified to perform a job on the record before the plan administrator. The record belies the majority's conclusion that Mr. Duhon is "able to perform the functions of some identifiable job."[14] Maj. Op. at 14. Mr. Duhon's family physician and *one of Texaco's own physicians* concluded *without contradiction* that Mr. Duhon was physically and permanently *in*capable of performing "any job for which he is qualified."[15] Hence, Texaco, bearing the burden of proof on both the physical-capability element and the qualification element, was required to prove that Mr. Duhon *could have become* qualified to perform a job.

---

[14]The record also belies the majority's "emphasis" that only *six* exhibits were made a part of the administrative record. The administrative record included at least *18* exhibits. It may have contained even more, for Texaco was not forthcoming in turning over the administrative record to Mr. Duhon. In fact, counsel for Mr. Duhon complained several times to the district court about Texaco's refusal to comply with his requests for the administrative record. The appellate record does not affirmatively indicate that Texaco completely complied with those discovery requests.

[15]Interestingly, after reviewing the conclusions of all three doctors consulted here, Texaco's own health department advised Texaco to continue Mr. Duhon's long-term disability benefits.

However, Texaco failed—indeed refused—to show that Mr. Duhon could have become so qualified. Contrary to the majority's rendition of the facts, the record provides no information whatever as to Mr. Duhon's prior experience in the "work-a-day world" other than the fact that he drove a truck for Texaco from July 29, 1985, to March 1, 1989. All three doctors consulted in this case agreed that Mr. Duhon could no longer drive trucks, so the record contains no evidence that Mr. Duhon is physically capable of performing a job which he once performed in the "work-a-day" world. Further, while it is true that Mr. Duhon is a high school graduate, the fact of the matter is that many moons have passed since his graduation in 1947.[16] Nothing in the record reveals that Mr. Duhon ever used or honed any of the skills he gained in school—whether reading, writing, or otherwise. Yet the majority presumes that Mr. Duhon—a man with limited work experience and limited education, who cannot bend, stoop, squat, or lift more than twenty-five pounds,[17] who cannot stand for longer than thirty minutes at a time and requires a special chair for sitting,[18] and who is physically incapable of

---

[16]Texaco did not even direct the district court's attention to Mr. Duhon's high school education. Texaco instead rested its case in the district court, as it has in this Court, on its position that the benefit plan does not require proof that an employee is or can become qualified to perform a job.

[17]Dr. Lahasky, a Texaco physician, determined that Mr. Duhon could not lift anything *at all*.

[18]The majority correctly notes that no medical records support Mr. Duhon's statement that he cannot stand for longer than 30 minutes and requires a special chair for sitting.

performing *any* job for which he is qualified——is "employable throughout the work place today."  That presumption is, at best, specious.  This writer is more than confident that senior citizens are engaged in fruitful employment throughout this nation; however, those citizens are not hindered by limitations——physical and otherwise——which Mr. Duhon endures.

Mr. Duhon properly pointed to the lack of evidence of the qualification element to the district court, and Texaco did not contend that such evidence existed.  Under the Supreme Court's clear mandate in *Celotex Corp. v. Catrett*, Mr. Duhon sufficiently met his burden of proving that no genuine issue of material fact existed.  477 U.S. 317, 325 (1986) (holding that "the burden on the moving party [in summary judgment cases] may be discharged by `showing'——that is, pointing out to the district court——that there is an *absence* of evidence to support the nonmoving party's case" (emphasis added)).  Thus, the district court correctly granted summary judgment in Mr. Duhon's favor.  That decision should be affirmed.

---

However, Texaco, which shouldered the burden of proving that Mr. Duhon was not permanently disabled, proffered no evidence which rebutted Mr. Duhon's claim.  His claimed standing and sitting limitations are therefore undisputed.