CRISIS TRANSPORTATION COMPA-
NY, Plaintiff-Appellant,

v.

M/V ERLANGEN EXPRESS, her
engines, tackle, etc., et al.,
Defendants-Appellees.

No. 85–2460
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 11, 1986.

Thomas O. Deen, Houston, Tex., for plaintiff-appellant.

R. Jeffrey Coppock, Houston, Tex., for defendants-appellees.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

Crisis Transportation Company (Crisis), appeals from the district court's Fed.R. Civ.P. 41(b) dismissal of its cause of action. Crisis urges us to reverse on the grounds that the district court erred in determining that Crisis failed to establish a prima facie case of negligence under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300, et seq. We agree with the district court that no prima facie case had been made out at the close of Crisis' proof. The complaint was thus properly dismissed when Crisis failed to carry its burden of proof. We therefore affirm.

## I.

◼ Hapag-Lloyd, A.G. ("Hapag") carried 171 lots of furniture from Greenock, Scotland, to Houston, Texas. The furniture, which belonged to Peyton Place Antiques ("Peyton"), was shipped pursuant to a clean bill of lading, issued by Hapag without marks or exceptions.[1] Under the terms of the contract of carriage, as set forth in the bill of lading, the cargo was to be shipped "house-to-house."[2] The bill of lading incorporated the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300, et seq. (COGSA), which was to apply so long as the cargo was in Hapag's custody after being discharged in a United States port.[3]

Hapag's vessel, the M/V ERLANGEN, arrived at Houston and discharged the furniture in late October 1982. The Port of Houston Authority (the "Authority") placed the container of furniture on pads inside the Authority's storage area. Several days later, Crisis called for the cargo. After the Authority verified that the Crisis driver was authorized to pick up the cargo, the driver went to the Authority's chassis yard where, upon presentation of his paperwork prepared by Hapag, he was told by the Authority where to find the particular type of chassis that his paperwork indicated he would need. He located the chassis and attached it to his tractor-truck.[4]

---

1. A clean bill of lading has no notations indicating that the goods, or the containers in which they are packed, were in any way defective when received by the carrier. Gilmore and Black, *The Law of Admiralty* § 3–13 at 122 (2d ed. 1975).

2. "House-to-house" is commonly understood to refer to transportation of a container and its contents with the goods being packed by the shipper in his warehouse and carried intact to the destination, from consignor to consignee. At no time does the carrier handle the contents of the container. *See Austracan U.S.A. v. Neptune Orient Lines*, 612 F.Supp. 578, 585 (S.D.N.Y.1985).

3. The effect of this stipulation in the bill of lading is to say that COGSA applies during shipment until discharge, and that the Harter Act, 46 U.S.C. §§ 190–96, applies thereafter until delivery. We refer to COGSA as interpreted in the light of the Harter Act. *See Tapco Nigeria, Ltd. v. M/V Westwind*, 702 F.2d 1252, 1255 (5th Cir.1983); *Allstate Insurance Co. v. Imparca Lines*, 646 F.2d 166, 168 (5th Cir.1981). The Harter Act in effect extends the application of the principles of law of COGSA up to the point of proper delivery to the consignee.

4. The chassis in this case is a type of trailer.

The Authority loaded the container onto the chassis and the driver left the port.

While driving with the cargo on his truck, Crisis' driver drove under (almost) an overpass that had a clearance of thirteen feet nine inches. The height of the truck with the load on it was approximately fourteen feet six inches. The top of the cargo container struck the overpass and the cargo inside was damaged.

Crisis paid Peyton for the damage to the cargo and became legally subrogated to Peyton's rights against Hapag and Biehl & Company ("Biehl"), Hapag's agent in Houston. Crisis then sued Hapag and Biehl, alleging that they had legal control over and responsibility for the cargo until it was loaded on Crisis' truck. Crisis argued that Hapag and Biehl caused the damage to the cargo by improperly allowing the cargo, which was in a "high cube" container, to be placed on the wrong type of chassis at the time of actual delivery to Crisis. After a nonjury trial, the district court concluded that because Crisis had failed to show any damage to the cargo while the cargo was in Hapag's and Biehl's custody, Crisis had failed to make out a prima facie case of negligence. The court specifically found that all damage to the cargo resulted from the collision between the cargo container and the overpass. Upon motion by Hapag and Biehl, the district court dismissed the case, with prejudice, under Fed.R.Civ.P. 41(b) for failure to establish a prima facie case.

Crisis argues on appeal that it was error for the district court to grant the defendants' motion to dismiss. Crisis contends that the cargo damage resulted from the defendants' negligence in breach of their duty to handle the cargo carefully, specifically the duty to place the cargo container on an appropriate chassis before delivering the cargo to Crisis. The defendants Hapag and Biehl, on the other hand, argue that they are not liable under COGSA because the cargo was delivered properly, in accordance with the bill of lading, and in an undamaged condition. The question before us is whether the district court erred in granting the defendants' Rule 41(b) motion to dismiss.[5]

## II.

■■■ The bill of lading covering the cargo incorporated the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300, *et seq.*, (COGSA), and that law, as opposed to principles of negligence under state or other law, governs all claims for damages before us. *See Associated Metals and Minerals Corp. v. M/V Rupert de Larrinaga*, 581 F.2d 100, 101 (5th Cir.1978). Under the COGSA, to establish a prima facie case of liability for damages, Crisis has the burden of proving that the cargo was received by Hapag, the carrier in this case, in good condition, and that the cargo was damaged upon discharge by the carrier at its destination. Proof that the cargo was in a damaged condition when discharged or delivered is essential to establish a case of prima facie liability. *Pacific Employers Insurance Co. v. The M/V Gloria*, 767 F.2d 229, 239 (5th Cir.1985); *Westinghouse Electric Corp. v. M/V Leslie Lykes*, 734 F.2d 199, 206 (5th Cir.1984); *Blasser Brothers, Inc. v. Northern Pan-American Line*, 628 F.2d 376, 381 (5th Cir.1980); *Socony Mobil Oil Co. v. Texas Coastal & International, Inc.*, 559 F.2d 1008, 1010 (5th Cir.1977); *Miami Structural Iron Corp. v. CIE National Belge de T.M.*, 224 F.2d 566 (5th Cir.1955).

■■■ We agree with the district court that Crisis has failed to supply adequate proof to make out a prima facie case against the defendants. Neither Crisis nor Peyton gave notice to Hapag, as provided for in COGSA, of loss or damage within three days after the delivery. Such lack of notice is prima facie evidence that the carri-

---

**5.** Because this Rule 41(b) dismissal falls into the category of dismissal for insufficient evidence, it is in effect a determination on the merits, and we apply the usual standards on review of a judgment on the merits of a nonjury civil case.

The district court's conclusions of law are subject to *de novo* review, but we may not disturb its findings of fact unless they are clearly erroneous. 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2376 at 248 (1971).

er delivered the goods in good condition as described in the bill of lading. 46 U.S.C. § 1303(6); *Associated Metals and Minerals Corp. v. M/V Rupert de Larrinaga*, 581 F.2d at 101. Because Crisis has put forth no evidence suggesting that the cargo was damaged prior to delivery, the presumption of good delivery that arises from this lack of notice stands. *See Pacific Employers Insurance Co. v. M/V Gloria*, 767 F.2d at 238; *Socony Mobil Oil*, 559 F.2d at 1012.

█ Crisis' proof at trial completely failed to counter this presumption of undamaged delivery. There is no evidence, and Crisis does not allege, that the cargo was actually damaged at any time before it left the physical control of the carrier Hapag. Crisis contends that Hapag was responsible for loading the cargo onto the chassis and Crisis' truck, and that improper loading proximately caused the later damage. General maritime law, however, requires only that a carrier "unload the cargo onto a dock, segregate it by bill of lading and count, put it in a place of rest so that it is accessible to the consignee, and afford the consignee a reasonable opportunity to come and get it." *Tapco Nigeria, Ltd. v. M/V Westwind*, 702 F.2d 1252, 1255 (5th Cir.1983); *F.J. Walker, Ltd. v. M/V "Lemoncore"*, 561 F.2d 1138, 1142 (5th Cir.1977) (quoting *American President Lines, Ltd. v. Federal Maritime Board*, 317 F.2d 887, 888 (D.C.Cir.1962)). Such delivery relieves the carrier of his responsibility under COGSA and the Harter Act. *See generally Allstate Insurance Co. v. Imparca Lines*, 646 F.2d 166 (5th Cir.1981); *F.J. Walker, Ltd.*, 561 F.2d 1138. Because the principles of law under COGSA apply to this case, Crisis' argument that Hapag is liable for damage occurring after good delivery because of negligent loading will not carry the day. The carrier's obligation under COGSA and the Harter Act does not extend to proper placement on the consignee's chassis. That the cargo was in good condition and available to Crisis for pick-up was sufficient for Hapag and Biehl to fulfill their statutory duty. Crisis has failed to establish a prima facie case that the cargo was in a damaged condition when discharged or delivered, and thus has not met its burden of showing that damage occurred to the cargo *before* it left Hapag's control. Any damage occurring after the Authority and Crisis took control of the cargo cannot be imputed to Hapag or Biehl. *See All Commodities Supplies Co. v. M/V Acritas*, 702 F.2d 1260, 1263 (5th Cir.1983).

Crisis puts forth no evidence that contradicts the fact findings of the district court, and we find no reason to disturb them. The district court correctly concluded that Crisis has failed to establish a prima facie case of negligence under COGSA and that upon the facts and the law, Crisis made no showing of its right to relief from the carrier or the carrier's agent. The Rule 41(b) dismissal is therefore

AFFIRMED.