**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 94-40263

LLOYD SWITZER,

Plaintiff-Appellee,

versus

WAL-MART STORES, INC.,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Texas

(May 12, 1995)

Before WISDOM, WIENER and PARKER, Circuit Judges.

WIENER, Circuit Judge.

In this ERISA[1] case Defendant-Appellant Wal-Mart Stores, Inc. (Wal-Mart), in its capacity as plan administrator of the Wal-Mart Stores, Inc. Health Benefit Plan (the Wal-Mart Plan), appeals from an adverse ruling of the district court ordering it to reconsider Plaintiff-Appellee Lloyd Switzer's claimed medical expenses. The district court, after acknowledging that a lapse in Switzer's health insurance coverage precluded him from obtaining a legal

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

remedy, nevertheless concluded that Wal-Mart was "arbitrary and capricious" in denying Switzer's claims and proceeded to fashion a so-called equitable remedy to achieve the result that the court found proper under the circumstances. Concluding that the court clearly erred in factual determinations upon which this case turns and erred as a matter of law in holding that Wal-Mart's denial of Switzer's claims was "arbitrary and capricious," we are constrained to reverse its ruling, vacate its judgment, and render a take-nothing judgment against Switzer.

I

FACTS AND PROCEEDINGS

Switzer went to work for Wal-Mart in 1988, where he became a participant in the Wal-Mart Plan. His participation, and thus his health insurance coverage, ceased automatically when he quit his job with Wal-Mart in September 1990. Switzer elected to take out a COBRA[2] continuation policy of health insurance under the Wal-Mart Plan, doing all that was necessary to obtain such coverage and thereafter to maintain it--from the inception through the calendar month ending August 31, 1991-- by timely remitting the full amount of each monthly premium payment by personal check.[3]

During the few months after Switzer left his Wal-Mart job, Wal-Mart made several administrative errors in connection with

_____

[2] Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-68.

[3] Switzer's first COBRA payment, made on December 27, 1990, covered a period from September 8, 1990 through January 31, 1991. All of his subsequent payments, however, were made on a monthly basis.

2

winding up his coverage under the Wal-Mart Plan, improperly deducting insurance premiums from Switzer's accrued vacation pay. Wal-Mart reversed those incorrect deductions by the end of January 1991, however, and the errors have no direct bearing on Switzer's ensuing health insurance difficulties, except to the extent that they figured into the district court's determination that Switzer was justified in believing that Wal-Mart had a propensity for making such mistakes in administering its insurance plan.

Effective June 21, 1991, Switzer was rehired by Wal-Mart. As his prior employment termination in September 1990 constituted a true break in service and not a leave of absence, his return in June 1991 was tantamount to new employment and he was deemed a "new hire" under the Wal-Mart Plan. He was therefore subject to a 90-day waiting period before his re-enrollment in the Wal-Mart Plan could become effective. Switzer was aware of the delay in coverage under the Wal-Mart Plan resulting from that waiting period and of his need to maintain his COBRA coverage by making timely monthly premium payments until his regular coverage under the Wal-Mart Plan recommenced.

In addition to having received a summary plan description (SPD) detailing COBRA in ordinary, conversational language, Switzer was given, and had in his possession at all pertinent times, a monthly coupon book for his COBRA policy. The coupon for the month of September 1991 specified that a premium payment of $82.46 was due and payable on August 28, 1991. It also reflected that Switzer was entitled to a grace period of 30 days, and that the August 28th

3

payment would be past due on September 27, 1991SQthe last day of the grace period.  The coupon contained the following statement:

> "IF PAYMENT IS NOT RECEIVED IN OUR OFFICE ON OR BEFORE PAST DUE DATE, COVERAGE WILL BE CANCELLED ON DATE LAST PAID."

Switzer never remitted the August 28, 1991, payment, in whole or in part; he also did not remit any other payment thereafter.  The last monthly payment that he made on his COBRA coverage was the one that was due late in July.  Switzer paid it by check on July 26th, maintaining his COBRA coverage in full force and effect only through August 31, 1991.[4]

Calculated on the basis of his re-employment date of June 21, 1991, Switzer's 90-day waiting period for coverage under the Wal-Mart Plan expired approximately three-fourths of the way through the period of his September COBRA coverage, before Switzer's COBRA coverage lapsed automatically on September 27th--effective retroactively to August 31st--due to non-payment.  Apparently concluding that the premium for that fractional period was subject to proration, the district court found that Switzer's final September COBRA payment should have been approximately $60 for that partial month, not the full $82.46 reflected on the coupon.[5]

---

[4]  The record reflects that Switzer had his wife handle these insurance matters, albeit in consultation with him, and that she had experience with insurance policies, having worked in the insurance business for some 15 years and even having owned her own agency at one time.

[5]  Wal-Mart contends that it questioned whether Switzer had a right to prorate the payment and indicated its position to the district court.  We find that resolution of the proration issue is not required for purposes of this appeal.

4

On October 4, 1991, Wal-Mart deducted a medical insurance premium from Switzer's regular monthly paycheckSQthe first deduction following Switzer's re-employment at Wal-Mart. The deduction covered Switzer's initial, partial period of renewed coverage under the Wal-Mart Plan, from his initial eligibility date of September 21, 1991 through October 4, 1991, the beginning of his first full month of coverage.

Also under date of October 4, Wal-Mart sent Switzer a computer-generated letter, which he received shortly thereafter. The letter informed him that his COBRA coverage would be canceled retroactively, effective to August 31, 1991, if he did not remit, by October 16, 1991, the $82.46 premium paymentSQan amount equal to a full month's COBRA premiumSQthat had been due on August 28, 1991 and had become past due on September 27, 1991. In addition to stating that cancellation of his COBRA coverage would be effective retroactively to August 31, 1991, the letter advised that canceled coverage could not be resumed.[6]

Despite the obviously important nature of that information, Switzer elected to make no payment whatsoever. He also elected not to contact anyone at Wal-Mart about the October 4th letter or about the COBRA payment to which the letter referred. Rather, he took it upon himself, with the counsel of his wife only, to conclude (erroneously) that, inasmuch as his final COBRA period was a

---

[6]We note that by October 4, 1991, Switzer's COBRA coverage had already lapsed (effective retroactively to August 31, 1991) by virtue of his failure to pay his August 28th premium by September 27th, the last day of the 30-day grace period.

partial month and the figure mentioned in the letter was equal to a full month's premium, the delinquent payment referred to in the letter must have been covered by Wal-Mart's October 4th payroll deduction. Switzer came to this incorrect conclusion without inquiring about his misinterpretation, despite the fact (as found by the district court) that he was consciously interested in maintaining uninterrupted health insurance coverage.

Switzer had a known heart condition which constituted a pre-existing condition under the Wal-Mart Plan. That plan provided that all pre-existing conditions were excluded from coverage until the plan participant had been continuously covered for twelve consecutive months. Thus, to avoid any lapse in coverage triggering the Wal-Mart Plan's one-year exclusion for his pre-existing heart condition by creating a "new" starting date for his coverage under that plan, Switzer had to maintain his COBRA coverage in effect until September 21, 1991, ninety days after his re-employment at Wal-Mart on June 21, 1991. Quite simply, if Switzer maintained continuous coverage from one plan to the other, the heart condition would have been covered continuously through a combination of the two plans; but if the COBRA coverage lapsed before his Wal-Mart Plan coverage began, the Wal-Mart Plan's one-year exclusion of pre-existing conditions from coverage would exclude Switzer's heart condition from coverage between August 31, 1991 (the end of COBRA coverage) and September 21, 1992 (the end of the Wal-Mart Plan's one-year exclusion period).

On February 20, 1992SQduring the exclusion period for pre-

6

existing conditions under the Wal-Mart PlanSQSwitzer suffered a heart attack. His medical bills exceeded $50,000. As Plan Administrator, Wal-Mart considered but denied Switzer's claims for medical costs and expenses. Wal-Mart denied his claims based on the lapse, effective retroactively to August 31, 1991, of Switzer's COBRA coverage resulting from his non-payment of the September 1991 COBRA premium, and the Wal-Mart Plan's one-year exclusion of pre-existing conditions from coverage.

After exhausting his administrative remedies to no avail, Switzer filed suit in state court seeking reimbursement of medical expenses from the Wal-Mart Plan. Based on ERISA's preemption, Wal-Mart removed the suit to the federal district court, which conducted a bench trial.

The district court found that Wal-Mart, by voluntarily assuming a duty to inform Switzer of his impending lapse of COBRA coverage in a manner that the court believed to be ineffective and confusing, had breached its fiduciary duty to Switzer to provide him with clear and accurate information. In its ruling, the district court acknowledged that Wal-Mart had no duty to inform Switzer of the impending lapse in his COBRA health insurance coverage. Nonetheless, the court took the position that if a plan administrator decides, in the absence of a duty to do so, to notify a plan participant of an impending loss of coverage, it must make certain, by clearly communicating to the participant, that the participant abandoning coverage does so knowingly and intentionally.

In holding that Wal-Mart's communication to Switzer was not adequate, the court referred specifically to Wal-Mart's letter of October 4, 1991, which stated that Switzer needed to pay $82.46 rather than a prorated amount estimated to be approximately $60. In light of Wal-Mart's past errors in administering Switzer's coverage, the court reasoned, Switzer was entitled to a more thorough explanation from Wal-Mart, summarizing his payments and advising him expressly of the need to avoid the impending three-week gap in coverage. The district court believed that the notice from Wal-Mart to Switzer did not make sufficiently clear that the delinquent COBRA payment was unrelated to the premium that Wal-Mart had deducted from Switzer's paycheck on October 4, 1991, for his coverage under that plan commencing September 21, 1991. The court also concluded that Wal-Mart's letter should have clarified the meaning of the October 16th payment deadline for Switzer's delinquent COBRA payment and that deadline's relationship to the original September 27th past due date.

Recognizing the unavailability of a legal remedy to achieve the result it deemed appropriate under the circumstances, the district court crafted an "equitable" remedy: It ordered Wal-Mart to accept a late payment from Switzer, thereby retroactively curing his failure to pay the final COBRA premium and eliminating the gap between his COBRA and Wal-Mart Plan coverages, and ordered Wal-Mart to reconsider Switzer's claims for medical expenses that resulted from his heart problems. Wal-Mart timely filed a notice of appeal, and this review ensued.

8

ANALYSIS

A.    Standard of Review

We review a judgment on the merits of a nonjury civil case applying the usual standards of review.[7]    Thus, we review conclusions of law de novo and findings of fact for clear error.[8] If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently.[9]    Nevertheless, a trial court's finding is "clearly erroneous" when, although there is evidence to support the finding, the reviewing court is left with a definite and firm conviction that a mistake has been made.[10]

Although we generally review de novo the denial of benefits under an ERISA health plan,[11] when the plan administrator is vested with discretionary authority to construe the terms of the plan and determine eligibility for benefitsSQas was Wal-MartSQthe decisions of the plan administrator can only be reversed if found to be

---

[7]    See Crisis Transp. Co.v.M/V Erlangen Express, 794 F.2d 185, 187 n.5 (5th Cir. 1986).

[8]    See id.

[9]    See First United Fin. Corp. v. Specialty Oil Co., 5 F.3d 944, 947 (5th Cir. 1993) (citing Anderson v.City of Bessemer City, 470 U.S. 564, 574 (1985)).

[10]    See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

[11]    See Firestone Tire and Rubber Co. v. Bruch, 109 S. Ct. 948, 956-57 (1989).

arbitrary and capricious.[12]  We review de novo the district court's conclusion that the plan administrator's determinations were arbitrary and capricious.[13]

B.   Wal-Mart's Letter to Switzer

As a starting point, we agree with the district court that Wal-Mart as plan administrator was not legally or contractually bound to inform Switzer that he was late in remitting his final COBRA premium.  And we do not necessarily disagree with the implication that if and when a plan administrator thus elects to act as a Good Samaritan andSQwithout prior inquiry from the participantSQgratuitously communicate with a plan participant about such a matter, the administrator must do so in a manner calculated to avoid confusion and misunderstanding, whether by omission or commission.  It is at this point, however, that we part company with the district court.

First, the district court suggests that for ERISA purposes the instant situation was other than routine.  That is clearly erroneous:  Wal-Mart is not exactly your typical Mom and Pop operation; we speculate that among its tens of thousands of employees, many miss such payments every monthSQsome intentionally and others inadvertently.  Only by computer can the myriad employee benefit matters of such a giant employer be monitored.  Thus by definition, Wal-Mart could not possibly give personalized attention

_____

[12]   See id.; Vasseur v. Halliburton Co., 950 F.2d 1002, 1006 (5th Cir. 1992).

[13]   See Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029 (8th Cir. 1993).

10

to each and every employee. To conclude that Wal-Mart should have known, in the absence of an inquiry from Switzer, that he did not want his COBRA coverage to lapse before his coverage under the Wal-Mart Plan recommenced is to ignore the realities of the situation.

Wal-Mart's form letter to Switzer regarding his delinquent COBRA premium payment was not sent in response to an inquiry from Switzer; he never bothered to initiate one. In addition, no one has questioned the accuracy of the dates or time limits set forth in that letter. Consequently, the district court's reliance on Electro-Mechanical Corp. v. Ogan,[14] and Anweiler v. American Elec. Power Serv. Corp.,[15] to impose a higher duty of promptness and adequacy on Wal-Mart in connection with that communication to Switzer is misplaced. Electro-Mechanical Corp. makes clear that, absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists.[16] It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading.[17]

---

[14] 9 F.3d 445, 451-52 (6th Cir. 1993) (holding that plan administrator did not breach its fiduciary duties where it had adequately explained plan contents, and employee had failed to inquire about plan term that he misinterpreted on his own).

[15] 3 F.3d 986, 991-92 (7th Cir. 1993) (holding that fiduciaries breached their duties by not giving beneficiary full and complete information).

[16] See Electro-Mechanical Corp., 9 F.3d at 452.

[17] See id. at 451.

Regardless of the level of the plan administrator's duty, however, the court's finding that Wal-Mart's communication did not provide sufficiently clear and accurate information to Switzer concerning the status of his COBRA coverage is clearly erroneous. Remember, Switzer knew and understood that his coverage under the Wal-Mart Plan would not clutch in until September 21, 1991, 90 days after he rejoined Wal-Mart as an employee. Additionally, he still had in his possession the premium coupon book (and presumably the SPD) for his COBRA coverage, had used those coupons during the period of his unemployment and for the first two months following his re-employment, and had in hand the particular premium coupon for the payment in question. That coupon clearly and unambiguously reflected the billing period that it covered (September 1-30, 1991), the date by which the premium was due (August 28, 1991), the date on which that payment would be past due (September 27, 1991), and the fact that if such payment were not received by Wal-Mart on or before the past due date, Switzer's COBRA coverage would be canceled automatically as of August 31, 1991SQthe last date for which he had made premium payments and a date of which Switzer was quite clearly aware.

With that in mind we also find significant that which the record reflects did not occur: Despite Switzer's conceded knowledge that he had to keep his COBRA coverage in effect at least through September 21, 1991 and that his prior premium payments kept his coverage alive only through August 31, 1991, Switzer made a conscious decision not to remit the payment reflected on the coupon

12

as being due on August 28; he did not pay on that date, or on the specified past due date of September 27, or on any date in between. Significantly, Switzer's decision not to pay the premium that was due on August 28 could not have been affected by Wal-Mart's October 4th notice; it came far too late for that!

Switzer likewise made a conscious decision not to initiate any inquiries to Wal-Mart indicating his concern or confusionSQhe did not inquire about whether he had to make a payment, about whether the payment could be prorated for a lesser amount, or about anything else regarding his coverage. So, in light of all of his knowledge and his interest in avoiding a gap in coverage, Switzer overtly considered his options and elected to take no action, make no inquiries, and allow the past due date to come and go, knowingly disregarding the premium coupon's statement that "coverage will be cancelled on date last paid."[18]

In fact, when Wal-Mart sent its October 4, 1991 form letter to Switzer, his COBRA coverage had already lapsed! It was a pure act of grace, then, for Wal-Mart to allow life to be breathed into Switzer's moribund COBRA policy, thereby avoiding a gap between that coverage and Switzer's Wal-Mart Plan coverage, by extending from September 27th to October 16th the time in which Switzer could

---

[18] Even though Switzer contends that he also misinterpreted the statement on the premium coupon, "Grace period for this bill is 30 days," as meaning it would run from either the past due date of September 27th or the billing period expiration of September 30th, it is clear that Switzer took it upon himself to make that interpretation and, as with the other matters, initiated no inquiries to the plan administrator or anyone else to clear up his own confusion.

13

still remit the premium that had been due on August 28th and had become delinquent on September 27th. The district court did not acknowledge the difference between a voluntary notice of impending COBRA coverage lapse sent at a time <u>before</u> the lapse occurs, and the instant situation in which Wal-Mart's gratuitous October 4th notice was sent after the time for premium payment had passed. Switzer's COBRA policy had presumably terminated <u>ipso</u> <u>facto</u> before Wal-Mart sent its letter in effect offering a re-opening of the expired grace period. The full content of the October 4th letter bears reproduction here:

> DEAR LLOYD SWITZER,
>
> THIS NOTICE IS TO INFORM YOU THAT YOUR CONTINUATION COVERAGE COBRA WILL BE CANCELLED IF FULL PAYMENT IN THE AMOUNT OF $82.46 IS NOT RECEIVED IN OUR OFFICE POSTMARKED ON OR BEFORE 10/16/91.
>
> THIS CANCELLATION WILL BE EFFECTIVE AT 12:00 MIDNIGHT ON THE LAST DAY THROUGH WHICH COVERAGE HAS BEEN PAID, 08/31/91. CANCELLED COVERAGE CANNOT BE RESUMED. NO OTHER NOTICE OF DISQUALIFICATION WILL BE SENT.
>
> SINCERELY,
>
> WAL-MART CONTINUATION COVERAGE

We find that Wal-Mart's communication to Switzer was clear and unambiguous. The only conceivably questionable item in the entire communication is the amount of the premium, $82.46, and even that corresponds, to the penny, with the premium amount set forth on Switzer's premium coupon. That figure can be deemed ambiguous or misleading only if one adverts to the de minimis premium difference produced by the putative (and, by Wal-Mart, questioned) right to

14

proration. Besides, the law does not require a perfect communication, only one that is sufficiently clear and complete to avoid the labels of inadequate, ambiguous, confusing or misleading. That lawyers or judges might improve on the notice or nitpick it here or there does not necessarily subject it to such pejorative appellations. It need not be "the best" as long as it is reasonably clear and understandable. Wal-Mart's October 4th letter is at least that.

Despite Switzer's receipt of that letter and its obviously crucial importance to himSQimportance which, the district court found, Switzer appreciated and was concerned aboutSQhe neither remitted the payment of $82.46 or any lesser amount nor contacted Wal-Mart to inquire about any perceived discrepancies between the full amount of the monthly premium and his estimate of an approximate prorated amount. Switzer never inquired about the extended but different period within which he now could remit the payment, about any possible nexus between the letter's warning and the insurance deduction from his first paycheck (we can but wonder why his belief that he was entitled to proration of his last COBRA premium apparently did not provoke a similar thought process regarding proration of the September 21-October 4 fractional month for which Wal-Mart made a payroll deduction for insurance under its plan), or about anything else that would help him determine the status of his health insurance coverage under both COBRA and the Wal-Mart Plan within the extended grace period.

The district court found that Switzer and his wife

15

"conscientiously attempted to maintain uninterrupted health coverage." We cannot square that finding with Switzer's rather cavalier "do nothing" behavior during the period of several months between the time he remitted the penultimate COBRA premium on July 26, 1991 and the expiration of his extended grace period on October 16, 1991SQa time span during which his 90-day waiting period under the Wal-Mart Plan expired, his premium coupon for his ultimate COBRA premium went unused, and the past due date of September 27th for that premium (on which date the 30-day grace period expired) came and went. The tragic truth is that this portrays a terribly regrettable example of one who snatches defeat from the jaws of victory; the tragedy, however, cannot be laid at Wal-Mart's feet in this instance.

C.  Wal-Mart's Denial of Switzer's Claims

The district court acknowledged the highly deferential "arbitrary and capricious" standard under which it was compelled to review the Plan Administrator's decision to deny benefits to Switzer. We review that court's determination de novo. Given the court's express recognition that there was a lapse in coverage and that the lapse was the direct result of Switzer's conscious decision not to pay the final COBRA premium, we find incomprehensible its conclusion that the plan administrator's denial of benefits was "arbitrary and capricious." The district court justified that holding, however, by concluding that Wal-Mart "attempted" to notify Switzer about the unpaid September premium but that Wal-Mart "failed to get its message across." We must

16

again respectfully disagree.

Switzer received Wal-Mart's mailing, written in clear and unambiguous terms. Unfortunately, he made a conscious, deliberate decision to ignore it or at least to refrain from acting on it. His doing that cannot be said to prove that Wal-Mart "failed to get the message across." We discern nothing in—or omitted from—Wal-Mart's October 4th letter that could put into play a chain of events justifying that the end result, i.e., the plan administrator's denial of benefits, should be labeled "arbitrary and capricious."

To force Wal-Mart—or, more correctly, the other participants whose premium burdens would ultimately increase if the Wal-Mart Plan were to pay an unwarranted claim—to accept Switzer's never-tendered 1991 COBRA premium now, and thereby resuscitate Switzer's coverage and Wal-Mart Plan's financial responsibility for his medical claims, would truly be to confirm the adage, "No good deed goes unpunished." Not only did Wal-Mart act as a prudent fiduciary by furnishing, gratis, an extra notice and an extra couple of weeks within which to remit that all-important, final COBRA premium, it did so in a factually faultless manner. Its October 4th letter to Switzer was adequate and "written in a manner calculated to be understood by the average plan participant."[19] When competent majors such as Switzer knowingly and intentionally elect to act—or not to act—in a particular way in response to reasonable stimuli,

---

[19] 29 U.S.C. § 1022(A)(1) (outlining requirements for plan descriptions).

17

they alone must accept responsibility for their own acts or abstentions. We cannot forever seekSQand findSQa deep pocket to ameliorate the regrettable results of a plaintiff's own unfortunate mistake.

The district court was clearly erroneous in its factual determination that Wal-Mart's actions, particularly its notice of October 4, 1991, were inadequate, misleading, confusing, or otherwise deficient in any manner. That error of fact caused the district court to err reversibly in holdingSQon the basis of such findingsSQthat Wal-Mart as the plan administrator was arbitrary and capricious in rejecting Switzer's claims for medical expenses arising from or connected with his pre-existing heart condition and subsequent heart attack. Section 1104(a)(1)(D) of ERISA[20] is a mandate to plan administrators to act "in accordance with the documents and instruments governing the plan"[21]SQhere,the Wal-Mart Plan description, the SPD, and possibly the premium coupon too. Given the universally acknowledged fact that under these relevant documents and instruments, Switzer's failure to pay the September COBRA premium caused his coverage to lapse as of August 31, 1991, triggering the one-year exclusion of his heart condition from coverage under the Wal-Mart Plan, Wal-Mart would have breached its duty as plan administrator if it <u>had</u> paid Switzer's claim! That truly would have been arbitrary and capricious.

_____

[20]   29 U.S.C. § 1104(a)(1)(D) (describing fiduciary duties).

[21]   <u>Id.</u>

18

D.    Remedy

As we find that the factual underpinnings of the district court's decision are clearly erroneous and conclude in our de novo review that Wal-Mart was not arbitrary and capricious in denying Switzer's claim, we need not (and therefore do not) analyze in depth the propriety of the "equitable" remedy that the court fashioned out of the whole cloth.  We are nevertheless constrained to observeSQadmittedly in obiter dictaSQthat the district court's reliance on equity in the absence of an available legal remedy may well have constituted impermissible overreaching.  For its license to craft an equitable remedy, the court relied on ERISA sections 502(a)(3)(A) and (B).[22]   Such reliance was almost certainly misplaced.  Traditional equitable remedies statutorily authorized under ERISA are even more narrowly drawn than are those authorized under the bankruptcy statute, of which we have repeatedly noted that "the statute does not . . . constitute a roving commission to do equity."[23]   Although the court couched its equitable remedy in terms of traditional injunctive or declaratory relief, in truth if its innovative remedy were to be implemented it would surely create substantive rights that Switzer did not have under the Wal-Mart Plan or under ERISA.  Principal among the unauthorized rights that would thus be created would be the right to have his long-dead COBRA coverage resurrected, Lazarus-like, by court-ordered

_____

[22]   29 U.S.C. § 1132(a)(3)(A),(B).

[23]   In re Sadkin, 36 F.3d 473, 478 (5th Cir. 1994); In re Oxford Management, Inc., 4 F.3d 1329, 1334 (5th Cir. 1993); United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986).

19

acceptance and retroactive application of the final COBRA premium payment that Switzer had deliberately elected not to pay when it was due. That he was laboring under a misconception regarding the effect of his non-paymentSQa self-induced misconception, not one caused by any fault of Wal-MartSQcannot change the result and grant him a remedy where none may validly exist.

III

CONCLUSION

The district court clearly erred in finding that the plan administrator's gratuitous notice to Switzer of October 4, 1991, was not adequate to warn him that he risked a lapse in his COBRA coverage if he did not pay the final premium by the extended grace period date of October 16th, particularly when that notice was sent a week <u>after</u> Switzer's COBRA coverage had already lapsed and should have been canceled automatically. In consequence of that clear error, the district court erred as a matter of law when it determined that Wal-Mart as plan administrator was arbitrary and capricious in denying benefits to Switzer. We must, therefore, reverse the rulings of the district court; vacate its orders that Switzer tender the appropriate COBRA premium to Wal-Mart and that Wal-Mart as plan administrator accept that premium and reconsider its denial of Switzer's claims for payment of his medical bills; and render a take-nothing judgment in Switzer's lawsuit against Wal-Mart Stores, Inc.

REVERSED, VACATED and RENDERED.