**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 96-40100
(Summary Calendar)

TERRY HILTON,

Plaintiff-Appellee/
Cross-Appellant,

versus

ASHLAND OIL INC,
Long-Term Disability Plan
for Scurlock Permian Drivers
and Hourly Paid Employees,

Defendant-Appellant/
Cross-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
(6:94-CV-754)

November 11, 1996

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant, the Long-Term Disability Plan for Permian

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Drivers and Hourly Paid Employees (the Plan), appeals the judgment rendered by the district court following a bench trial, reversing the decision of the Plan's administrator that Plaintiff-Appellant Terry Hilton was not qualified to receive long-term disability benefits under the Plan.[1]  As Cross-Appellant, Hilton appeals the the district court's rulings that (1) the plan administrator correctly interpreted the appeal provisions of the Plan, and (2) Hilton is not entitled to attorneys' fees because the plan administrator had not acted in bad faith in denying long-term disability benefits to Hilton.

Our review convinces us that, even though the district court correctly identified "abuse of discretion" as the appropriate standard for the court to apply when reviewing determinations of a plan administrator vested with discretion, the district court's reasoning, as fully set forth in its opinion, reveals that the court in fact tested the plan administrator's decision not for abuse of discretion but for clear error.  That opinion also reveals that, by requiring the plan administrator to prove that Hilton was not disabled, the court impermissibly reversed the burden of proof, which should have been Hilton's to prove that he is disabled for purposes of entitlement to benefits under the Plan, not the Plan's

---

[1]  The district court did not conclude, however, that the evidence was sufficient to determine, as a matter of law, that the Plan's terms required the granting of benefits to Hilton, so the court remanded the case to the plan administrator with instructions to take and consider additional evidence.

to prove that he is not.  We therefore reverse the judgment of the district court to the extent it held that the plan administrator abused its discretion in concluding that Hilton had not shown that he came within the Plan's definition of disability.  As a result of our reversal, we must reinstate the determination of the plan administrator to deny long-term disability benefits to Hilton.  We affirm, however, the judgment of the district court to the extent it rejected (1) Hilton's complaint regarding the Plan administrator's interpretation of the appeal provisions of the Plan, and (2) Hilton's request for attorneys' fees.

I

FACTS AND PROCEEDINGS

A.    Statement of the Case

Hilton filed suit in district court under ERISA[2] to recover long-term disability benefits from the Plan, which is an ERISA employee welfare benefit plan.  The case was tried to the court without a jury and produced a judgment in favor of Hilton.  In essence, that judgment vacated the plan administrator's denial of long-term disability benefits to Hilton as an abuse of discretion, but rejected Hilton's claims (1) that the plan administrator had misinterpreted and misapplied the reconsideration (appeal) provisions of the Plan, and (2) that Hilton was entitled to attorneys' fees.  Rather than rendering a judgment ordering the

---

[2] Employer Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

3

Plan to pay benefits to Hilton, however, the court remanded the case to the plan administrator with instructions to take additional evidence. The Plan timely appealed the reversal of the administrator's determination and the remand for the taking of further evidence, and Hilton cross-appealed the court's rejection of his claims regarding attorneys' fees and misinterpretation of the appeal provisions of the Plan.

B.   Facts

   1.   Findings of the District Court

Hilton was employed by Scurlock Permian as a truck driver for some ten years prior to September 1991 when he sustained a work-related lower back injury that prevented his continued work. He began receiving short-term disability payments, applied for and received Workers' Compensation, and applied for but was turned down for Social Security benefits because his monthly income disqualified him, not because of the nature of his injury.

At the time when Hilton was injured, he was a participant in the Plan which was sponsored by Ashland Oil, Inc. (Ashland), of which Scurlock Permian is a division. For purposes of ERISA, the Plan is an employee welfare benefit plan.[3] Approximately eleven months after he was injured, Hilton applied to the Plan for long-term disability benefits. Although Ashland is the plan administrator, Prudential Life Insurance Co. (Prudential) serves as

---

[3]   29 U.S.C. § 1002(1).

4

"claims administrator" and makes all eligibility determinations for the Plan (the remaining administrative duties and functions, including interpretation of the Plan, are performed by Ashland as plan administrator).

For purposes of entitlement to benefits, the Plan provides:

> You will be eligible for benefits, upon a timely filing of a claim for benefits and after expiration of the applicable waiting period, if medical evidence, satisfactory to the Plan administrator, shows that you are physically unable to perform the duties of any occupation for which you are reasonably qualified by education, training and experience, or for which you may be reasonably re-trained or rehabilitated.[4]

Within the required period of three months following Hilton's application, Ashland denied his claim.[5]

When Prudential denied Hilton's claim in November 1992, it considered the following evidence regarding Hilton's education, training and experience: He had a high school education; he had owned and managed his own service station; he had been self-employed as a mobile home mover; and, since coming to work for Scurlock Permian, his job had been that of a truck driver, which is classified as "heavy labor involving a lot [sic] of lifting, climbing, and bending."

---

[4] It is undisputed that the Plan allocates administrative and interpretative discretion to the plan administrator.

[5] The Plan contains a provision, which accords with ERISA regulations, 29 C.F.R. § 2560.503-1(e), specifying that a claim is deemed denied if no decision is forthcoming within ninety days following application.

In addition to the information that Prudential had at its disposal regarding education, training and experience, it had considerable information regarding Hilton's injury. A report from Dr. Danielson, Hilton's primary care physician throughout his treatment, indicated that Hilton had incurred a serious back injury and that a year of treatment had not improved his condition. After Hilton was diagnosed with degenerative discs in the bottom three levels of his spine, Dr. Danielson had prescribed physical therapy, including walking up to two to three miles a day, which Hilton did but not without severe pain. Following some six months of treatment, Dr. Danielson acknowledged that "Hilton is not doing well with physical therapy and we need to make some changes." Out of concern for Hilton's psychological attitude and its potential effect on recovery, Dr. Danielson referred Hilton to a clinical psychologist who concluded that "[p]sychologically, [Hilton] is a fair candidate for recovery" even though at the time he was experiencing some stress and emotional depression as a result of the injury.

After approximately one year, Dr. Danielson determined that, despite participating in the physical therapy program, Hilton was in constant pain which increased with activity. The doctor discussed surgery, which he thought of as a last resort. He nevertheless referred Hilton to a surgeon; however, Hilton had still not seen the surgeon by the time Prudential made its decision to deny his claim. Neither had a functional capacity evaluation

6

been performed before that decision was made: Dr. Danielson had recommended that Hilton check into the possibility of re-training in a sedentary field, and had set up a functional capacity evaluation for Hilton, but — as in the case of the recommendation to see a surgeon — Dr. Danielson's efforts to get Hilton to obtain a functional capacity evaluation went largely unheeded. Consequently, Prudential never received an impairment rating report until Hilton's attorney sent it in mid-March of 1993, some six months after the denial of Hilton's claim.

Meanwhile, Hilton had hired an attorney after the November denial of his claim, and the attorney asked for and received a 30-day extension to the 60-day time for appeal. That was early in January 1993. Despite having been advised by Prudential that Hilton was entitled to but one appeal before the decision became final, his attorney still had not submitted additional medical evidence to Prudential by late February, so he asked for and received yet another extension of 30 days. It was just before the second extension expired, in mid-March, that Hilton's attorney finally sent in the report on the impairment rating, and even then it showed only a nine (9%) percent whole body impairment. On the last day of March, Prudential affirmed its denial of benefits and rejected Hilton's appeal.

In July 1993 back surgery was performed on Hilton. Some six months after that, in January 1994, his attorney asked that the claim for long-term disability benefits be reconsidered for yet

7

another time.  As Prudential was not authorized to interpret the terms of the Plan, it referred the belated, additional request for another appeal to Ashland's Benefits Administration Office.  The request was denied for the stated reason that the plan permits but one appeal.  No claimant had ever received a second appeal, and the Summary Plan Description (SPD) makes no mention of a second appeal.

    2.    Additional Record Evidence

    The Plan is an employee-contributory one for which the plan administrator merely holds the contributions in trust and makes payments of benefits as required under the provisions of the Plan.  Entitlement to benefits requires that the employee furnish medical evidence satisfactory to the plan administrator that he is physically unable to perform the duties of any occupation, not just those of the job he was performing, and not capable of being re-trained to perform any such duties either.

    Although claim determination is delegated to Prudential, neither it nor the Plan is responsible for obtaining medical evidence, either to support or refute a claim.  Under the express provisions of the Plan, the participant has the burden of proof: "Obtaining medical evidence to establish a claim for Plan benefits is the responsibility of the participant and is obtained at the participant's cost."

    Hilton was a truck driver, a high school graduate, and a former small businessman who had owned and operated both a service station and a mobile home moving service.  Even though Hilton had

the burden of supporting his asserted disability with medical evidence, Prudential went "above and beyond" its duty by attempting gratuitously to obtain medical and vocational reports through Hilton's physician and the insurance company administering his workers' compensation claim. Scant as it was, the information that Prudential was able to recover included a physician's diagnosis of acute lumbar strain; another physician's report on motor testing that revealed no weakness, atrophy, or fasciculations; MRI evidence of L4-5 disc rupture; a physician's opinion that "[t]here is about an 80 percent chance that we can get [Hilton] over this without surgery"; a doctor-to-doctor letter reporting that Hilton had been walking between two and three miles a day, with a self-rated pain of four on a scale of ten, down from nine just after the accident, plus a show of concern about Hilton's substantial weight gain and its exacerbation of the situation; the possible need for psychological counseling; a subsequent letter from the physician to the workers' compensation carrier noting that no light duty was available but that Hilton was still walking two to three times a week, and that the physician would advise against surgery except as a last resort; and communication from the physician to Hilton suggesting that he check with the compensation carrier about settling the claim and the possibility of retaining in a sedentary field. In addition, the claims administrator at Prudential attempted to get specific information from Hilton's primary physician by writing and asking 17 questions, but none of the

questions were answered by the doctor. His unresponsive reply merely stated that Hilton would be "set up for a functional capacity evaluation and impairment rating . . . in the near future," which never happened until six months after the claim was denied. As for the 17 questions, the physician brushed them off with the statement that "[t]he information requested by your questions should be in his medical records already and I assume you have a copy of those and would suggest that you consult those for details." Significantly, the claims administrator received no additional information from that physician or from Hilton. In fact, her continued efforts to obtain information proved fruitless for the most part, basically reflecting that efforts to get testing and reports on Hilton had produced little or nothing of an informative nature, principally due to Hilton's failure to report or communicate.

Having nothing before her but the meager results of her own voluntary efforts to do Hilton's evidence-gathering job for him, the claims administrator recommended denial of Hilton's claim for failure to meet his burden of supplying acceptable evidence in support of the Plan's "any occupation" definition of disability. That recommendation was based on Prudential's inference, from the little evidence that was available, of the "possibility" of Hilton's being retained for sedentary work, coupled with the levels of his education and prior work experience, and the dearth of medical evidence that he could not perform or be re-trained to

10

perform the work required for any occupation.

During the specified period permitted for one appeal, as twice extended, the only additional medical submission reflected that Hilton adequately performed standing and walking tests and did not complain of pain, and that under the AMA guidelines, he suffered only a nine percent whole body physical impairment disability rating.

As noted, in recommending affirmance of the original denial, Prudential's claims administrator relied on Hilton's age, prior employment, and the "possibility" of sedentary employment through re-training. This was explained in detail to Hilton's attorney by telephone on the day in March before the appeal was rejected and was followed up by a letter even further detailing the reasons for denying the claim and the appeal. When, some nine months later, Hilton's attorney again wrote to Prudential seeking to re-open the matter on the basis of "additional medical evidence," his request was referred to Ashland. Its Supervisor of Benefits Administration responded that the Plan would not be able to review additional medical evidence because (1) no further appeal procedures were permitted under the Plan, and the (2) the length of time that had passed since the "second and final denial" was prejudicially excessive. Hilton filed suit some eight months after that.

3.   The Trial and the Judgment

In October 1995, following completion of a bench trial,

the district court ruled that the plan administrator's determination that Hilton was not disabled within the definition of the Plan constituted an abuse of discretion. Hilton's subsequent motion for attorneys' fees was denied. The district court remanded the case to the plan administrator with instructions to consider new evidence and make a new determination of disability based thereon.

## II

## ANALYSIS

A. <u>Standard of Review</u>

As correctly noted by the district court, when an ERISA plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the Plan's terms, decisions of the plan administrator must stand unless there is an abuse of discretion.[6] In turn, our review of the district court's determination whether a plan administrator endowed with discretionary rights has abused that discretion is conducted under the standards that we generally apply in non-jury civil cases:[7] Questions of law are review <u>de</u> <u>novo</u>[8]; findings of fact are reviewed

---

[6] <u>Firestone Tire & Rubber Co. V. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), <u>see</u> <u>also</u> <u>Cutting v. Jerome Foods, Inc.</u>, 993 F.2d 1293, 1295-96 (7th Cir.), <u>cert. Denied</u>, 510 U.S. 916 (1993).

[7] <u>Switzer v. Wal-Mart Stores, Inc.</u>, 52 F.3d 1294, 1298 (5th Cir. 1995).

[8] <u>Id.</u>; <u>Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co., Inc.</u>, 89 F.3d 243, 246 (5th Cir. 1996).

for clear error.[9]  Even though the district court's weighing of evidence is entitled to deference, the court's factual findings may be reversed as clearly erroneous when we are "left with a definite and firm conviction that a mistake has been made."[10]

B.   Determination of Disability

As accurately framed by the district court, Hilton claims first that the plan administrator erred in concluding that he failed to meet the Plan's definition of disability.  Because "Congress intended Plan fiduciaries, not the federal courts, to have primary responsibility for claims processing,"[11] a determination by a plan administrator vested with discretion to evaluate such questions as whether a claimant has met the definition of disability, must be upheld unless the plan administrator is found to have abused its discretion.  As stated by the district court here, abuse of discretion hinges on whether the plan administrator acted arbitrarily or capriciously.[12]  Under the arbitrary or capricious rubric, the plan administrator need only "articulate a satisfactory explanation for [its] action including

---

[9]  Switzer, 52 F.3d at 1298.

[10] Id. (citing Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

[11]  Duhon v. Texaco, Inc., 15 F.3d 1302, 1309 (5th Cir. 1994) (quoting Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989)).

[12]  Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir. 1994).

13

a rational connection between the evidence before it and its decision."[13]   We have made clear that when a district court is reviewing a determination of the plan administrator for abuse of discretion, the review is limited to the evidence that is actually before the plan administrator; and the same rule applies to our review of that decision.[14]   Central to our review of the district court's determination here, and equally central to that court's review of the plan administrator's determination that Hilton was not disabled as defined by the Plan, is the fact that the plain wording of the Plan expressly placed on Hilton —— as the party claiming to be disabled, and thus entitled to benefits —— the burden of proving (i.e., submitting credible and probative medical evidence satisfactory to the Plan), that he was in fact disabled to that extent.

The framework described by the foregoing legal maxims for testing the plan administrator's determination for abuse of discretion was correctly recited by the district court.  Despite such talismanic recitation, however, the court's own opinion demonstrates that in actuality the court (1) shifted the burden of proof from Hilton to the plan administrator, and (2) applied the

---

[13]   See Brooks v. Protective Life Ins. Co., 883 F.Supp. 632, 638 (M.D. Ala. 1995) (citing Motor Vehicle Mfs. Association of the United States, Inc. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

[14]   Wildbur v. ARCO Chem. Co., 974 F.2d 631, 639 (5th Cir. 1992).

14

clear error standard of review to the plan administrator's determination, rather than the substantially more deferential abuse of discretion standard.

The district court expressly "found that the evidence available to the Plan administrator is insufficient to support a finding that Hilton was not disabled." The foundational fallacy revealed by that statement is apparent: It was not the plan administrator's burden to find sufficient evidence to eschew disability; rather, it was Hilton's burden to submit sufficient satisfactory medical evidence to establish that he <u>was</u> disabled. By requiring the claimant to collect and submit evidence that he is so severely disabled that he cannot perform the duties of any occupation, a presumption of ability (i.e., a presumption against disability) clearly exists. We reiterate for emphasis that it was not incumbent on the plan administrator to make a "finding" that Hilton was "not disabled"; rather, it was incumbent on Hilton to adduce positively probative evidence sufficient to support a finding that he <u>was</u> disabled. Specifically, it was Hilton's burden to adduce a preponderance of evidence, satisfactory to the plan administrator (more discretion!), that he was not able to perform any job for which he was either qualified through education, training, and experience to perform, or that he could reasonably be re-trained to perform.

Our synopsis of the facts found by the district court and present in the record reflects a cavalier attitude and

15

lackadaisical effort on Hilton's part regarding the submission of probative evidence sufficient to support a determination that despite his education, training, and experience, he could not perform <u>any</u> job or be re-trained to do so. Indeed, the slight evidence before the plan administrator at the time the decision was made had been assembled thanks to the efforts of the claims administrator and her persistence in badgering physicians and the compensation carrier for additional information. Even with the luxury of two extensions of 30 days, neither Hilton nor his counsel produced positive evidence of the kind needed to meet the test of disability under the Plan.

The importance of the burden of proof under such a situation is demonstrated by the district court's own words that "[t]he evidence available to the Plan administrator is insufficient to support a finding that Hilton was not disabled." When the court's characterization of the evidence that was before the administrator is properly recast, with the burden placed on Hilton where it belongs under the Plan, the court could not have justified a determination of arbitrary or capricious decision making: "The evidence available to the plan administrator is insufficient to support a finding that Hilton was [] disabled."

Sometimes we must resort to <u>reductio ad absurdum</u> to make our point. Suppose that instead of having before her only the scant evidence that she had been able to assemble by "pulling teeth" of those from whom Hilton should have obtained and submitted evidence,

16

the claims administrator had had absolutely no evidence to consider. Under that hypothetical situation, the administrator would not have had even a scintilla of "evidence . . . to support a finding that Hilton was not disabled." Surely our hypothetical plan administrator could not be deemed to have abused discretion; yet under the district court's test — that the plan administrator must have sufficient evidence to support a finding that the claimant is <u>not</u> disabled — the same illogical holding of abuse of discretion would appertain. Q.E.D.

Compounding the error is the district court's specific reason for holding the plan administrator guilty of acting arbitrarily or capriciously: a "misinterpretation" of the record. The court first notes — correctly — that Prudential's claims administrator refused to credit Hilton's claim of disability as meeting the definition of the Plan by reciting <u>erroneously</u> that Hilton had completed his therapy and only needed to see the physician on an "as needed" basis; that Hilton's experience as a mobile-home mover and service station owner and operator, as well as his education, qualified him for future employment; and that he was capable of being re-trained for sedentary work. The court then painstakingly parsed and analyzed the reports and letters that the claims administrator had before her, concluding that the court's reading of such information demonstrated that the claims administrator's conclusions were the result of a "misinterpretation of the record."

Assuming, arguendo, that the district court is absolutely

correct, that its evaluation of the evidence that was before the claims administrator is right and that hers "misinterpret[ed] the record": The district court would then be within its rights to label as "clearly erroneous" the claims administrator's interpretation of the facts. But clear error is not the applicable standard of review of a plan administrator's discretionary determination. Rather, the applicable standard is abuse of discretion, and clear error simply cannot support a conclusion of arbitrary or capricious behavior by either the claims administrator or the plan administrator in this case.

First, whether correctly or not, the claims administrator demonstrated conscientious persistence — beyond her burden — to assemble the kind of medical and vocational evidence that Hilton was duty bound to present. The claims administrator twice extended the time requested by counsel for Hilton within which to submit additional evidence, but he failed to produce anything of a meaningful nature. The record demonstrates that Hilton, by his refusal to respond to correspondence or timely to submit himself for a vocational evaluation, became a positive obstacle to his own burden of proof.

Moreover, we must respectfully disagree with the district court's effort to distinguish the situation in <u>Duhon v. Texaco, Inc.</u>[15] Like Duhon, Hilton has failed to present medical evidence

---

[15] 15 F.3d 1302 (5th Cir. 1984).

18

of total disability, essentially presenting no evidence in support of his claim. While the question of the capability of performing sedentary work may differ slightly between Duhon and Hilton, there is at least an implication in both cases that the respective physicians anticipated the possibility of the plaintiff's being re-trainable to do just that. The most congruency between the two cases is the failure of the claimants to take advantage of abundant opportunities to present evidence of their own disabilities within the definition of the respective plans. Here, the district court in actuality applied the clear error standard, while mislabeling it the abuse of discretion standard and, at the same time, in actuality assigned the burden of proof to the wrong party, when it concluded that "[b]ased on the medical and work history before the administrator, it was an abuse of discretion to conclude that Hilton was not disabled under the Plan's definition." The very most that court could have concluded without committing error was that the plan administrator clearly erred in interpreting Hilton's admittedly scant evidence as being insufficient to meet his burden of proof that he was disabled — there being no burden on the plan administrator to prove Hilton was "not disabled under the Plan's definition." But clear error will not carry the day when abuse of discretion commands greater deference to the plan administrator.

We are convinced first that the record evidence before the claims administrator, and additionally before the plan administrator, at the time discretion was exercised to conclude

19

that Hilton failed to prove disability under the Plan's definition, demonstrated a rational exercise of discretion, not an abuse thereof. Even if she clearly erred in doing so, the claims administrator carefully considered all that she had to go on and found a rational nexus between those data and the purposes and provisions of the Plan. We are likewise convinced that the explanation articulated by the administrators were sufficient to demonstrate a rational connection between that evidence and the determination of Hilton's failure to prove qualifying disability to support such a decision. Based on these conclusions, we hold that, given such a rational relationship, there was nothing arbitrary or capricious in the administrators' actions and determinations, and thus no abuse of discretion on the part of the plan administrator. Consequently, the district court's determination that there was such abuse constitutes reversible error.

4. <u>Right to Further Appeals</u>

Hilton's second charge against the plan administrator was that it erred in limiting him to only one appeal. The district court concluded that:

> In this case, . . . the administrator's interpretation of the Plan's right of appeal is correct. First, Ashland Oil has given a uniform construction to the Plan, consistently interpreting the Plan to allow only one appeal. Moreover, the two letters that granted Hilton an extension on his first appeal emphasized that the first appeal is non-reviewable.
> Second, a fair reading of the Plan supports Ashland Oil's interpretation . . . . the

20

> complete description of the process for one
> appeal without mentioning a second appeal
> clearly implies that only one appeal is
> allowed.

We have reviewed the arguments and citations of authorities on this point as set forth in the briefs of Hilton's counsel, and we remain unconvinced that there was any error of fact or law in the district court's analysis and holding on the question of the number of appeals or reconsiderations to which Hilton was entitled. Indeed, we agree entirely with the district court's reasons and conclusions in this regard.

## III

## CONCLUSION

For the reasons set forth above, we respectfully disagree with the district court's determination that the plan administrator abused its discretion in rejecting Hilton's claim of permanent disability within the definition of the Plan. Our disagreement stems primarily from what we perceive to be an impermissible reversal of the burden of proof from Hilton, who was obligated to submit sufficient medical evidence to the plan administrator to prove disability, to the plan administrator, which the district court obligated to find sufficient evidence that Hilton was not disabled. That fundamental error, coupled with a de facto (mis)application of the clear error standard in the guise of the abuse of discretion standard of review of the plan administrator's determination, leaves us no choice but to reverse the abuse of

21

discretion holding of the district court and reinstate the determination of the plan administrator. On the other hand, we are satisfied that the district court was correct in affirming the plan administrator's interpretation of the Plan's limit of the number of appeals to which a claimant is entitled to one.

We therefore affirm the judgment of the district court to the extent it held that disappointed claimants for long-term disability benefits under the Plan are limited to one appeal; but we reverse the judgment of the district court to the extent it held that the plan administrator abused its discretion when it rejected Hilton's claim due to his failure to support his assertion of disability with sufficient medical evidence. In the absence of abuse of discretion, the determination of the plan administrator must be upheld, so we affirm the denial of Hilton's application for long-term disability benefits under the Plan.

AFFIRMED in part; REVERSED and RENDERED in part.